UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| LEE BURRELL, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. 3:15-CV-3568-B |
| | § | |
| ALFRED AKINOLA, VICTORIA F. AKINOLA, and NAAMAN COMMUNITY HEALTH SERVICES, INC., | § | |
| | § | |
| | § | |
| | § | |
| | § | |
| Defendants. | § | |

## MEMORANDUM OPINION AND ORDER

Before the Court is Defendants Alfred Akinola, Victoria F. Akinola, and Naaman Community Health Services, Inc.'s Rule 12(b)(6) Motion to Dismiss (Doc. 6). For the following reasons, the Court **DENIES** Defendants' Motion.

## I.

## BACKGROUND[1]

This is a suit for damages and a permanent injunction under the Americans with Disabilities Act ("the ADA" or "the Act") and the Texas Human Resources Code ("THRC"). Plaintiff Lee Burrell ("Burrell") alleges that he is a disabled man under the ADA who uses a wheelchair for mobility. Doc. 2, Compl. ¶¶ 1, 5, 15. At some point "recently," Burrell had to go to "the Center" to resolve an issue regarding his disability. *Id.* ¶ 15. The Center is an office complex located at 115

---

[1] The Court draws its factual account from the allegations in Plaintiff's Complaint (Doc. 2). *See Manguno v. Prudential Prop. & Cas. Ins. Co.*, 276 F.3d 720, 725 (5th Cir. 2002) (noting that, when considering a Rule 12(b)(6) motion to dismiss, "all facts pleaded in the complaint must be taken as true").

Executive Way, DeSoto, Texas, a property that Defendants Alfred Akinola and Victoria F. Akinola

(the "Akinolas") jointly own, and where Naaman Community Health Services, Inc. ("Naaman")

houses its health services business. *Id.* ¶¶ 1, 6–8, 16.

According to Burrell, the Center has several architectural barriers—(1) "no accessible route

to any of the businesses from the public street or sidewalk"; (2) "no accessible route into the

Naaman's Health Center from any parking"; and (3) "no accessible parking at the Center." *Id.* at

¶¶ 16, 27. Each time he visits, Burrell encounters some of these obstacles, which he says

"discriminate against him with regards to using the goods, services, facilities, privileges, advantages,

and accommodations located at the Center as required by the law." *Id.* ¶¶ 18–19, 28.

In light of the above, Burrell now sues Defendants on what he characterizes as three separate

counts:[2]

> (1) failure to accommodate when removal of architectural barriers was readily
> achievable under 42 U.S.C. § 12182(a), *id.* ¶¶ 21–29;
>
> (2) improper alterations, because some modifications made after January 26, 1992,
> were not made to ensure accessability "to the maximum extent feasible" under 36
> C.F.R. § 406 (in his response to Defendants' Motion to Dismiss, Burrell references
> the underlying statute, 42 U.S.C. § 12182(b)(2)(A)(iv)), *id.* ¶¶ 30–33; and
>
> (3) discrimination under section 121.003 of the Texas Human Resources Code, as
> the Center is a public facility that fails to comply with the Texas Accessibility
> Standards of the Architectural Barriers Act, *id.* ¶¶ 34–40.

Burrell asks the Court for an order (1) directing Defendants to modify the Center to bring

it into compliance with state and federal law; (2) directing Defendants to stop discriminating against

---

[2] The two ADA provisions Burrell cites are not technically separate claims, but, rather, two methods
by which a plaintiff can prove discrimination, the third element of an ADA Title III claim. *See infra* Part
III(A). Thus, Burrell brings two claims—one for disability discrimination under Title III of the ADA, the other
for disability discrimination under Section 121.003 of the Texas Human Resources Code.

him, now and in the future; and (3) awarding him attorney's fees, litigation expenses, and costs. *Id.*
¶¶ 41–44. Burrell also asks for (4) a money judgment against Defendants, awarding him damages "for
the violation of his civil rights under Texas state law in an amount no less than the statutory
minimum of $100.00 for each violation of his civil rights under state law," with "[t]he exact amount
to be determined by the trier of fact," as well as (5) "all other relief legal and equitable which the
Court deems just and proper." *Id.* ¶¶ 44–45.

On February 3, 2016, Defendants moved to dismiss all of Burrell's claims, Doc. 6, Mot. to
Dismiss, and on February 24, 2016, Burrell responded. Doc. 7, Pl.'s Resp. to Def.'s Mot. to Dismiss
[hereinafter Pl.'s Resp.]. The time for Defendants' reply having now passed, Defendants' Motion is
ripe for review.

## II.

## LEGAL STANDARD

Federal Rule of Civil Procedure 12(b)(6) authorizes a court to dismiss a plaintiff's complaint
for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). In
considering a Rule 12(b)(6) motion to dismiss, "[t]he court accepts all well-pleaded facts as true,
viewing them in the light most favorable to the plaintiff." *In re Katrina Canal Breaches Litig.*, 495 F.3d
191, 205 (5th Cir. 2007) (quoting *Martin K. Eby Constr. Co. v. Dall. Area Rapid Transit*, 369 F.3d
464, 467 (5th Cir. 2004)). The Court will "not look beyond the face of the pleadings to determine
whether relief should be granted based on the alleged facts." *Spivey v. Robertson*, 197 F.3d 772, 774
(5th Cir. 1999).

To survive a motion to dismiss, a plaintiff must plead "enough facts to state a claim to relief
that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "Threadbare

recitals of the elements of a cause of action, supported by mere conclusory statements, do not

suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "A claim has facial plausibility when the plaintiff

pleads factual content that allows the court to draw the reasonable inference that the defendant is

liable for the misconduct alleged." *Id.* "The plausibility standard is not akin to a 'probability

requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.*

When well-pleaded facts fail to achieve this plausibility standard, "the complaint has alleged—but

it has not shown—that the pleader is entitled to relief." *Id.* at 679 (internal quotation marks and

alterations omitted).

### III.

### ANALYSIS

A.     *Disability Discrimination under Title III of the ADA*

"Title III of the ADA provides that: 'No individual shall be discriminated against on the basis

of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages,

or accommodations of any place of public accommodation by any person who owns . . . or operates

a place of public accommodation.'" *Lara v. Cinemark USA, Inc.*, 207 F.3d 783, 786 (5th Cir. 2000)

(quoting 42 U.S.C. § 12182(a)). To sustain a Title III claim, a plaintiff must establish that "(1) he

or she is disabled within the meaning of the ADA; (2) the defendants own, lease, or operate a place

of public accommodation; and (3) the defendants discriminated against the plaintiff within the

meaning of the ADA." *Roberts v. Royal Atl. Corp.*, 542 F.3d 363, 368 (2d Cir. 2008) (citations

omitted). *See also Molski v. M.J. Cable, Inc.*, 481 F.3d 724, 730 (9th Cir. 2007); *Mershon v. St. Louis

Univ.*, 442 F.3d 1069, 1076 (8th Cir. 2006); *United States v. Morvant*, 898 F. Supp. 1157, 1161 (E.D.

La. 1995).[3]

The Akinolas and Naaman do not dispute that Burrell has adequately pled the first two elements, and, looking at his complaint, it is clear he has. *See* Doc. 2, Compl. ¶¶ 5–9, 15, 23; *see generally* Doc. 6, Mot. to Dismiss. What is at issue, then, is whether Burrell has adequately pled discrimination.

There are two ways to discriminate under Title III of the ADA. First, one can fail to remove architectural barriers "where such removal is readily achievable." *Roberts*, 542 F.3d at 368–69 (citing 42 U.S.C. § 12182(b)(2)(A)(iv)). Second, one can "alter" a facility—as the ADA so defines that term—so that it "affects or could affect the usability of the facility or part thereof," but not alter it "in such a manner that, to the maximum extent feasible, the altered portions of the facility are readily accessible to and usable by individuals with disabilities, including individuals who use wheelchairs." *Id.* at 368 (quoting 42 U.S.C. § 12183(a)(2)) (emphasis omitted). Both provisions apply to buildings constructed before the Act's effective date. *See id.* at 373 (noting that "the removal of barriers under 42 U.S.C. § 12182(b)(2)(A)(iv) . . . applies even to facilities that are neither new nor altered"); *Tatum v. Doctor's Associates, Inc.*, CV 14-2980, 2016 WL 852458, at *3 (E.D. La. Mar. 4, 2016) ("When *an existing place* of public accommodation undergoes alterations after the 1992 effective date . . . alterations 'shall be made so as to ensure that, to the maximum extent feasible, the altered portions of the facility are readily accessible and usable by individuals with disabilities, including individuals who use wheelchairs.'" (emphasis added) (quoting 28 C.F.R. § 36.402(a)(1))).

---

[3] It does not appear that the Fifth Circuit has explicitly laid out the elements of a Title III ADA claim, but other circuits seem to be consistent with one another here.

These two forms of discrimination are "no[t] separate . . . cause[s] of action technically," as Burrell recognizes. *See* Doc. 8, Pl.'s Resp. at 5 (citing 42 U.S.C. § 12101) (emphasis omitted)); 42 U.S.C. §§ 12182(b)(2)(A)(iv), 12183(a)(2). Rather, the two differ only in that individuals defending improper alterations claims lack the "readily achievable" defense they would otherwise have in defending failure to remove architectural barriers claims. *See* Doc. 8, Pl.'s Resp. at 5–6 (citing 42 U.S.C. § 12101(a)). That being said, improper alterations and failure to remove architectural barriers may be conceived of as two separate means of discrimination—a Title III claim's third element—and so even if the two are not technically separate causes of action, they are best addressed separately, for clarity's sake. *See generally Roberts,* 542 F.3d 363. Defendants, however, seem to regularly conflate the two forms of discrimination in their briefing. The Court does its best to note these instances, and to clarify the issues.

1. <u>Failure to Accommodate by Removing Architectural Barriers under 42 U.S.C. § 12182(b)(2)(A)(iv)</u>

Defendants first contend that Burrell did not adequately plead discrimination because (1) he admitted the Center was constructed before the ADA's effective date, rendering the ADA's provisions inapplicable; and (2) he failed to plead facts demonstrating that the premises had been modified after the Act's effective date, which would otherwise trigger a duty to remediate. Doc. 6, Mot. to Dismiss at 5–6 (contending that "[t]he duty [to remediate] only applies when modifications to the subject property are [already being] made," and that "there is no affirmative duty to make modifications unless alterations are otherwise being constructed").[4]

---

[4] Defendants conflate the two forms of discrimination here, so the Court does its best to parse their argument.

Burrell sees things differently. While he acknowledges that the building predates the ADA's effective date, he says this has no bearing upon the Act's prohibition on discrimination, which includes "failure to remove architectural barriers, and communication barriers that are structural in nature, in existing facilities . . . where such removal is readily achievable." *Id.* at 4 (quoting 42 U.S.C § 12182(b)(2)(A)(iv)) (emphasis omitted); *see also id.* at 5 (citing 28 C.F.R. § 36.304 (requiring "public accommodation[s] . . . remove architectural barriers in existing facilities, including communication barriers that are structural in nature, where such removal is readily achievable") (emphasis omitted)).

The Court finds Defendants' first argument meritless. The fact that the Center was constructed before the ADA's effective date is irrelevant. Claims for failure to remove architectural barriers apply to buildings built both before and after the Act's effective date. *See Roberts*, 542 F.3d at 373. Defendants' citation to 28 C.F.R. § 36.401 is unavailing, as it does not stand for the broad proposition that the ADA applies only "to new facilities for 'first occupancy after January 26, 1993,'" as Defendants suggest. Doc. 6, Def.'s Mot. to Dismiss at 6 (citing  28 C.F.R. § 36.401(a)). Rather, that regulation limits only a certain subset of ADA discrimination claims—those based on *failure to design and construct* facilities that are readily accessible—to buildings built after January 26, 1993. *See* 28 C.F.R. § 36.401(a)(1) (emphasis added) ("Except as provided in paragraphs (b) and (c) of this section, discrimination for purposes of this part includes a failure to design and construct facilities for first occupancy after January 26, 1993, that are readily accessible to and usable by individuals with disabilities.")). In no way does that regulation relieve all buildings pre-dating the ADA from the Act's strictures where otherwise applicable. *See Roberts*, 542 F.3d at 373 (noting that "the removal of barriers under 42 U.S.C. § 12182(b)(2)(A)(iv) . . . applies even to facilities that are

neither new nor altered").

Defendants' second argument—that Burrell failed to plead facts demonstrating that the premises had been modified after the Act's effective date, which would trigger a duty to remediate—is not persuasive, either. This sort of argument applies to discrimination based on improper alterations under 42 U.S.C. § 12183(a)(2), not failure to remove architectural barriers in existing facilities, if readily achievable, under 42 U.S.C. § 12182(b)(2)(A)(iv).

Defendants have not made the obvious argument here, though—that Burrell's claims, as pled, are not specific enough to state a claim for failure to remove architectural barriers, if readily achievable. And while the Court will not reward such an omission, it does note that Burrell's claims do veer awfully close to the line past which this Court will dismiss a claim.

Burrell has alleged that (1) "there is no accessible route to any of the businesses [in the Center] from the public street or sidewalk"; (2) "there is no accessible route into the Naaman's Health Center from any parking"; and (3) "[t]here is no accessible parking at the Center." Doc. 2, Compl. ¶ 16.

This is not quite as specific as allegations in other cases where plaintiffs have survived a motion to dismiss. *See Dodson v. Joseph Esperanca, Jr., LLC*, No. 12-CV-02132, 2013 WL 6328274, at *1 (E.D. Cal. Dec. 4, 2013) (denying Defendant's Motion to Dismiss because plaintiff alleged certain architectural barriers, whose removal was readily achievable, existed, such as: (1) "[d]isabled parking spaces with slopes and cross slopes that exceed 2%"; (2) "[a]ccess aisle with slopes and cross slopes that exceed 2%"; (3) "[t]he words 'NO PARKING' . . . not [being] painted within the access aisle"; and (4) "[t]he signage at the van accessible parking space . . . not comply[ing] with accessibility requirements").

On the other hand, Burrell's allegations are not quite as sparse as those in cases where plaintiffs have *not* survived a motion to dismiss. *See Riggle v. Valero,* No. 15-CV-413, 2016 WL 3149671, at *2 (D. Neb. June 3, 2016) (granting Defendant's 12(b)(1) Motion to Dismiss, albeit for lack of standing, given "Plaintiff['s] suggest[ion] [that] he 'had difficulty using the restroom,' the 'toilet stall' and had a difficult time 'turning the bathroom handle to enter and leave the bathroom' . . . [were] bare assertions[,] . . . [leaving] the Court . . . to guess as to how any of the alleged ADA violations apply to plaintiff's stated disabilities or how defendant's correction of the supposed violations would remedy the discrimination to which plaintiff claims he is subjected").

Rather, Burrell's allegations are most similar to that of the plaintiff in *Hamblen v. Diamante Crossroads Plaza*, LLC, No. CV-08-0561, 2009 WL 825809 (D. Ariz. Mar. 30, 2009). The plaintiff there alleged that "(1) the majority of the curb ramps are excessively steep; (2) there are no curb ramps with detectible warnings; (3) in at least one location the sidewalk cross slope is excessively steep; (4) the slope of 'accessible' parking spaces and access aisles is excessive; and (5) the width of access aisles adjacent to 'accessible' parking spaces is too narrow." 2009 WL 825809, at *1. Based on these allegations, the *Diamante* Court denied the defendant's Motion to Dismiss. *Id.*

This Court acknowledges that it is not its place to answer whether Burrell's allegations were specific enough to state a failure to remove architectural barriers claim, given Defendants did not raise this issue. Were it forced to, though, it would resolve the question in Burrell's favor.

2.    Improper Alterations under 42 U.S.C. § 12183(a)(2)

Defendants next argue that Burrell did not adequately plead discrimination on improper alterations grounds, either. Again, however, they conflate two distinct concepts: improper alterations under 42 U.S.C. § 12183(a)(2), and failure to remove architectural barriers in existing facilities, if

readily achievable, under 42 U.S.C. § 12182(b)(2)(A)(iv). Here, in assailing Burrell's improper alterations argument, Defendants contend that "not one fact is alleged from which it may be deduced that any modifications to the facility had ever been effected which would have triggered the requirement to '*remove architectural barriers*.'" Doc. 6, Mot. to Dismiss at 6 (emphasis added). The Court assumes that, given the heading in this portion of their brief, Defendants mean to address Burrell's *improper alterations* argument, which has nothing to do with any sort of requirement to remove architectural barriers. Accordingly, the removal language does not apply, and the Court moves on.

Defendants arguments here are simple: (1) Burrell failed to allege sufficient facts to demonstrate the Center was altered in such a way as to trigger 42 U.S.C. § 12183(a)(2)'s modification requirement; and (2) Burrell's "seek[ing] leave to continue this litigation to conduct discovery to ascertain the facts he needs to establish his claim" is inappropriate, given "[i]t appears that no efforts were undertaken by him to investigate this claim prior to filing," and he made "[n]o allegation . . . that a search of building permits was conducted to determine if any prior owner, or Defendants, ever sought any modifications to the facility." *Id.* at 6–7.

Burrell responds by pointing to his Complaint, where he alleges that he "set out and describe[d] numerous features at the Center that 'affect or could affect the usability of the building or facility or any part thereof,'" and that "[s]ome of the barriers, upon information and belief, were modified after the date of construction and after the date for 'modifications' under the ADA." Doc. 8, Pl.'s Resp. 6 (citing Doc. 2, Compl. ¶ 31). Burrell also notes that "[w]hether something has or has not been altered over the last 25 years is a fact issue that the [he] can't be expected to know before filing," given "[m]any alterations do not require permits or public notice of any kind[,] so there is

no way to know if they have been made." *Id.* at 6–7 (emphasis omitted). Accordingly, he says "[his] pleading is upon information and belief," and, after "a [R]ule 34 inspection has been completed and discovery undertaken," he can determine "which areas, if any, have in fact been modified." *Id.* at 7 (emphasis omitted). Thus, Burrell insists, his Complaint is sufficient.

Burrell is right. He "is likely to lack the very information that [Defendants] maintain[] should be pled," and, "[w]here a plaintiff is at an informational disadvantage—where the information necessary to plead with greater specificity is in the possession of the defendant—courts give plaintiffs 'some benefit of the doubt to go along with the specific facts it has pled.'" *Hamblen*, 2009 WL 825809, at *1 (citations omitted). This Court will do the same. Burrell "is at a clear informational disadvantage and likely would be able to provide evidentiary support for his claim of alterations only after conducting discovery." *Id.* Further, while Defendants note that "[i]t appears that no efforts were undertaken by [Burrell] to investigate []his claim prior to filing," and that he made "[n]o allegation . . . that a search of building permits was conducted to determine if any prior owner, or Defendants, ever sought any modifications to the facility," they cite no authority to suggest he was required to do so. Doc. 6, Mot. to Dismiss 6–7.

Therefore, the Court **DENIES** Defendants' Motion to Dismiss Burrell's ADA Title III claim. Burrell has adequately pled discrimination—as well as the claim's other elements—under both a failure to remove architectural barriers theory and an improper alterations theory. *See* 42 U.S.C. §12182(b)(2)(A)(iv) (failure to remove); 42 U.S.C. §12183(a)(2) (improper alterations).

B.    *Disability Discrimination under Section 121.003 of the Texas Human Resource Code*

Finally, Defendants move to dismiss Burrell's disability discrimination claim under the THRC. Under that statute, failing to comply with Chapter 469 of the Texas Government

Code—which applies to "privately funded building[s] or facilit[ies] . . . defined as . . . 'public accommodation[s]' by Section 301 . . . [of the ADA]"—qualifies as discrimination. Tex. Gov't Code Ann. § 469.003(a)(4). This means that such buildings must comply with the Texas Accessibility Standards of the Architectural Barriers Act ("TAS"), which is similar to the ADA's Accessibility Guidelines. Tex. Hum. Res. Code Ann. § 121.003(d)(1).

Defendants argue that Burrell's THRC claim must fail for two reasons. First, they say that Chapter 469 limits facilities subject to the relevant THRC provision to "public accommodations" under the ADA that were "constructed, renovated, or modified on or after September 1, 1993," insinuating that Burrell failed to plead that the building in question met that requirement. Doc. 6, Mot. to Dismiss 7–8 (citing 42 U.S.C. § 12181; Tex. Gov't Code § 469.001). Second, Defendants argue that "the relief sought by [Burrell] under his putative state claim is not available," as "[§121.004 contains] no provision for injunctive relief." *Id.* at 8.

Burrell responds by reiterating that he has pled that the Center was modified after the ADA's effective date, and therefore his claim is not precluded by Chapter 469. Doc. 8, Pl.'s Resp. 7–8 (citing Doc. 2, Compl. ¶¶ 35–38). As to the Defendants' argument that injunctive relief is unavailable under the THRC, Burrell agrees, but insists "that does not affect the validity of [his] claim[,] because [he] is not seeking injunctive relief under his State law claim." *Id.* at 7 (emphasis omitted).[5]

The Court is not swayed by Defendants' first argument. Burrell is correct for the reasons the

---

[5] Burrell elaborates here with a rather obtuse argument: that "reference to compliance with State and Federal law in his 'request for relief' is merely a nod to *that fact*." Doc. 8, Pl.'s Resp. at 9 (emphasis in original). It is unclear which "fact" Burrell refers to. In any event, Burrell argues that this means that if "it"—and the Court is not sure what "it" means—"is brought into compliance with either set of standards, . . . it will be in compliance with both[,] because of the certification of equivalency issued by the D.O.J." *Id.* Further, "it is not a request for injunctive relief *per* the State law claim." *Id.* This argument is not entirely clear to the Court. But because clarifying this argument is unnecessary to deciding this Motion, the Court moves on.

Court set forth when it declined to dismiss his ADA claim based on an improper modifications theory. *See supra* Part III(B). Defendants' second argument is not convincing, either. Defendants are correct to point out that Texas Human Resources Code § 121.004(b) contains no provision for injunctive relief—a point which Burrell concedes. *See* Tex. Hum. Res. Code § 121.004; Doc. 6, Mot. to Dismiss 7; Doc. 8, Pl.'s Resp. 8. That statute *does,* however, provide for minimum presumptive damages of $300.00 for each violation of the law, to be paid to the disabled individual. *See* Tex. Hum. Res. Code § 121.004(b). Burrell, for his part, seeks such damages, though lists the minimum amount as $100.00.  Doc. 2, Compl. ¶ 39 (citing Tex. Hum. Res. Code § 121.004(b)). So even if there is no injunctive relief provision in the Texas statute, because there is a damages provision, Defendants' second argument—that Burrell has pled no viable form of relief—is not persuasive.

Therefore, the Court **DENIES** Defendants' Motion to Dismiss Burrell's THRC claim.

## IV.

## CONCLUSION

In light of the above, the Court:

**DENIES** Defendants' Motion to Dismiss Burrell's disability discrimination claim under Title III of the ADA; and

**DENIES** Defendants' Motion to Dismiss Burrell's disability discrimination claim under the Section 121.003 of the Texas Human Resource Code.

**SO ORDERED.**

**SIGNED: June 27, 2016**.


JANE J. BOYLE
UNITED STATES DISTRICT JUDGE